58  707
103  264

## PARKS v. BURBANK.

1. **Fraudulent Representations:** EVIDENCE OF: EQUITABLE RELIEF. Evidence considered and held to show, that plaintiff was induced to make a certain purchase by false and fraudulent representations as to the value of the property; and that he was entitled to a decree for the cancellation of the notes given as part consideration for the property.

2. ——: ——: ——: COMPROMISE. Where negotiations were had in respect to a settlement of the matter in dispute and offers of compromise were made, but were not accepted or acted upon, the party would not be precluded thereafter from asserting the fraud.

*Appeal from Clinton Circuit Court.*

TUESDAY, JUNE 13.

ACTION in equity for an injunction to restrain the defendant from disposing of certain promissory notes, executed by the plaintiff to the defendant, amounting to $2,600. The notes and a certain farm in the State of Illinois were given to the defendant for a hotel in the city of Lyons. The plaintiff traded for the hotel, without ever having seen it, and in

reliance upon certain representations made to him by the de fendant. He avers in his petition that the representations were false and fraudulent, and that he sustained damages by reason of the fraud, in the sum of $3,000. The defendant denied all fraud, and pleaded a settlement by a subsequent agreement of the matter in dispute.

The court rendered a decree for the cancellation of the notes, and made the injunction perpetual. The defendant appeals.

*A. R. Cotton*, for appellant.

*W. C. Grope* and *L. A. Ellis*, for appellee.

ADAMS, J.—The evidence shows very clearly that the property; other than the notes received by the defendant, was worth as much as the hotel. We think also that

**1. FRAUDU-LENT repre-sentations: evidence of: equitable relief.** it shows that the plaintiff was drawn by the defendant into such an unequal trade by false and fraudulent representations. We shall not allude to all the representations alleged to be fraudulent, nor attempt to fully set out the evidence. To do so would extend the opinion beyond all proper limits, and serve no useful purpose. Each member of the court upon a separate reading of the evidence, has reached the conclusion that some, at least, of the allegations of fraud are proven.

The first representations made were contained in a letter written by the defendant to the plaintiff, in which he stated that the hotel was located "on C. & N. W. and C., C., Dubuque & Minn. R. R." The evidence shows that the abbreviations C. & N. W. R. R., were used to denote the Chicago & Northwestern Railroad, and that it was not true, as stated, that the hotel was located on the Chicago & Northwestern Railroad. But it is said that while the statement was not strictly true, it was substantially so, because it was true that the Chicago & Northwestern Railroad Company operated a road running through the city of Lyons, and it was not material that the company's road did not run through Lyons.

There is no evidence as to the importance of the Chicago & Northwestern R. R. as compared with the road running through Lyons which was operated by the Chicago & Northwestern R. R. Co., and we cannot, therefore, go into any inquiry upon that point. In the defendant's letter to the plaintiff the C. & N. W. R. R. and the C., C., Dubuque & Minn. R. R. were spoken of as distinct roads, and the representation was that they both ran through Lyons. This was false and fraudulent and intended to deceive in a material point, the importance of Lyons as a railroad center or junction. If there had been any evidence that the C., C., D. & M. road was not the road operated by C. & N. W. R. R. Co., but another road not mentioned, there would be some little ground for contending that the defendant's departure from the truth was not material, but there is no such evidence, and no such suggestion or pretense.

Again in the same letter the defendant, speaking of the hotel uses these words: "Has cleared over $100 per month on average for past three years while I have owned and run it." The evidence upon this point is not entirely without conflict, but we are satisfied, taking it altogether, that the hotel had not cleared that amount, and could not be expected to, in view of its character and location by any kind of management.

We come next to inquire whether the plaintiff, after he discovered the defendant's fraud, made a settlement whereby he 2. ——: ——: precluded himself thereafter from asserting the ——: compromise. fraud. Certain correspondence took place in which the plaintiff claimed that he had been greatly injured by the trade. It appears that a part of the consideration agreed to be given by the plaintiff to the defendant was a team and wagon. The plaintiff insisted that he ought to be allowed to keep the team and wagon, and we have to say that we do not see any ground upon which such claim by the plaintiff was based except the unfairness of the trade into which he had been drawn. The correspondence shows that

the defendant threatened to replevy the team and wagon; but finally in one of his letters he said " To avoid costs and trouble you may keep the team if you will send me a draft for $100." The plaintiff then offered somewhat less than that amount which was not accepted. After variours negotiations which proved abortive, the defendant wrote to the plaintiff in these words: " I withdraw all my offers and propositions about the team." The plaintiff then wrote to the defendant offering to give the defendant one month's rent of the hotel, which it is shown was $50, and a secured note for $50, saying that that would make up the defendant's proposition of $100. The defendant wrote the plaintiff that he would instruct his agent to deliver the team to the plaintiff, if he would send him the note as suggested, and sign an order which was inclosed in the letter. What the order was does not appear. It is sufficient to say that whatever it was the plaintiff did not sign it, but drew an order himself on the tenant of the hotel and sent it to the defendant, and the defendant refused to accept it, and so notified the plaintiff on the 8th day of March, 1880. Here the negotiations appear to have ended, and on the 7th day of May following, the plaintiff brought this action for the cancellation of the notes. We do not think then that there was any settlement that could be deemed to preclude the plaintiff from maintaining the action.

<div align="right">AFFIRMED.</div>