MRS. GEORGE MATTAUCH, Appellant, v. WALSH BROS. & MILLER, RICHARD H. WALSH, WILLIAM H. MILLER.

**Fraudulent .representations:** EVIDENCE: · SUBMISSION OF ISSUE.
1 Where the evidence, in an action for deceit in inducing an exchange of goods for land, is such as to justify a finding that representations as to the character and value of the land, made as statements of fact, were untrue and intended to deceive and that plaintiff relied thereon to his damage, the issue should be submitted to the jury. Evidence held to require submission.

**Same:** REPRESENTATIONS OF VALUE. Where the vendor of land in-
2 tends that his assertion of its value shall be acted upon as true, and not merely as his estimate, but the same is knowingly false and induces a sale, it constitutes an actionable fraud.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN, Judge.

MONDAY, NOVEMBER 18, 1907.

ACTION for damages caused by deceit alleged to have been practiced on plaintiff resulted in a directed verdict for defendants. The plaintiff appeals.— *Reversed.*

*Allen & Lingenfelter,* for appellant.

*Sullivan & Sullivan,* for appellees.

LADD, J.— The plaintiff exchanged a stock of milli-
nery of the estimated value of $2,000 to one Bannister for
eighty acres of land near Cooper at $60 per acre. Deceit
with respect to the value and character of the

**1. FRAUDULENT
REPRESENTA-
TIONS: evi-
dence: sub-
mission
of issue.**

land is alleged, and the evidence was such that
this issue should have been submitted to the
jury. The plaintiff testified that some time
previous to the transaction she had said to Benkert that she
would sell the stock if she could get a good price; that Ben-
kert replied that he would get a deal; that later, when she
had been purchasing goods in Des Moines and was about
to take the train for Earlham, Benkert and Walsh met her
at the depot, and the latter informed her that they had been
over to see her stock, and that he had a fine deal for her;
that the land he proposed to exchange was all tillable, with
forty acres under cultivation, and had certain buildings on
it; that he had been over every foot of it, as he had a farm
nearby, and that he knew it was worth $60 per acre; that
she told him she knew nothing about land and would like to
wait until her husband returned, to which Walsh replied:
" It is a fine thing, and the land is worth $60 per acre, and
do not, on any account, let it slip." At this time a mutual
acquaintance came up, and, upon being informed of the
negotiations, cautioned Walsh not to take advantage of the
lady, when Walsh assured him of the value of the land, and
that she was getting a fine deal. Thereupon plaintiff de-
cided to stay over and examine the land the next day, and
telephoned her sister-in-law at Van Meter to accompany her.
They went to the depot in the morning, and while waiting
for the train to go to Cooper in came Benkert and Walsh,
who invited them to another part of the room to talk over the
affair. Here it developed that she and Walsh belonged to
the same church, and they talked until it was found the train
had gone. Walsh then assured her that she could trust him;

that the land was worth what he said; that in looking at it she would occasion an expense without benefit; that he was an Irish Catholic like herself, and would not cheat her; that the deal would wait no longer, and she had better take advantage of it.    They then went to defendant's office, and after some conversation with the owner and Miller, who assured her she could rely upon Walsh and another, the deal was consummated.    Plaintiff was corroborated in her account of the transaction in the morning by the testimony of her sister-in-law, and much of the testimony of both is contradicted by the evidence adduced on the part of defendants.

As verdict was directed, however, we are concerned only in ascertaining whether there was affirmative evidence tending to support the charge of deceit.    It turned out that the Coon river runs through the farm a distance of sixty-five or seventy rods, and also that a highway extended through it from north to south; that but fifteen or twenty-two acres in patches were in cultivation; that the river bank is high, and a portion of the land hilly, some of it a hundred feet above the river.    The witnesses of plaintiff estimated the value of the land at $25 to $30, and those of the defendants from $40 to $45 per acre, except one, who placed it from $40 to $60.    So that the jury might have found:    (1) That the value of the land was asserted to be $60 per acre as a fact, and not as of opinion, and the character of the land was described; (2) that the land was worth at least $20 per acre less, and was not of the character represented; (3) that plaintiff in exchanging relied upon the representations made, and was deceived thereby to her damage.    The only doubt is as to whether the evidence was such that the jury might have found that the representations, when made, if at all, were known to be false and made with intent to deceive.    In view of what might have been regarded as a scheme to prevent plaintiff from examining the land, the assurance of Walsh that she could trust him, his testimony that he had never seen the land, that he knew that a part of it was rough with

the river through it, and that it was worth from $40 to $50 per acre only, we think the evidence was ample to carry these issues also to the jury.

Counsel have discussed somewhat the question as to whether a statement of value may be regarded as an assertion of fact, or should be treated as the expression of opinion merely. This must necessarily depend on

2. SAME: representations of value. the circumstances of each case, and usually upon the intention of the party making the statement. Here the evidence in behalf of plaintiff clearly indicated the intention of Walsh that his assertion of the value of the land should be acted upon as true, and not merely as his estimate, and, if so, and it was knowingly false and induced an exchange by plaintiff to her damage, it was actionable. *Door v. Cory,* 108 Iowa, 725; *Hansen v. Kline,* 136 Iowa, 101. See *Brown v. Holden,* 120 Iowa, 195, also *Brown v. Krouse,* 132 Ill. 177 (23 N. E. 1012), where the court held that "if the vendor dissuades the vendee from examining the property upon the assurance that it is useless expense, and that his statements may be relied upon, the statements, if false, will be grounds for setting aside the sale." The cause should have been submitted to the jury.

Some other points are argued which may be disposed by adverting to the fact that the contract was one for the exchange of properties, and that plaintiff could have been damaged no more than the difference, if any, between the actual market value of the land, and that of the stock of millinery as it was and good will, if included.— *Reversed.*