## No. 10,796.

WHITTEMORE, ET AL. v. WILKINS, ET AL.

Decided June 22, 1925.

Action to rescind contract.    Judgment for defendants.

*Reversed.*

1. FRAUD—*Sales.* Evidence reviewed and held to show that defendants resorted to fraud, misrepresentation and concealment to induce plaintiffs to purchase property for a grossly exorbitant price.

2.     *False Representations.* In the circumstances of the case under consideration plaintiffs had a right to rely upon the representations made by defendants in effecting a sale of rooming house property to them, notwithstanding they had an opportunity to examine the property.

3. REMEDIES—*Fraud—Rescission—Damages.* Generally a party claiming fraud must elect when he brings his suit whether he shall ask for rescission or compensation for damages.

4. ACTIONS—*Fraud—Remedies.* In an action based on fraud where the facts which render rescission impossible first came to the knowledge of the party claiming fraud after he had instituted his action for rescission, and where he is in no way responsible for the condition which prevents rescission, his action may proceed as one for damages, provided his complaint contains the necessary allegations for that relief.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. E. E. ENTERLINE, Mr. JOHN T. MALEY, Mr. WILLARD W. WALLACE, for plaintiffs in error.

MR. EDWIN H. PARK, for defendants in error.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

PLAINTIFFS in error brought suit for the rescission of a contract entered into between plaintiffs in error and defendants in error Wilkins, Alley, and Collins, and against Katherine M. Christeson for the sale by defendants to plaintiffs of the furniture in the rooming house or hotel known as the Delevan Hotel, in Denver. The case was tried to the court, and at the conclusion of the plaintiffs' evidence a motion for nonsuit as to all defendants was sustained.

Plaintiffs prosecute this writ of error. Several months after the commencement of the action the Metropolitan State Bank, intervener, was made a party defendant upon the application of the plaintiffs. The defendants, Katherine M. Christeson and the Metropolitan State Bank have not been brought into this court, and this opinion will discuss the questions involved only so far as they effect the defendants Wilkins, Alley and Collins.

The plaintiffs paid for the furniture, furnishings, goods and chattels in the Delevan Hotel purchased from the defendants the sum of $13,500, as follows: $2,000 cash, and executed to the defendants Wilkins, Alley and Collins one note for $4,500, and two notes to Wilkins and Alley, one for $4,500, and one for $2,500.

To secure these notes the plaintiffs executed and delivered to defendants a chattel mortgage on the personal property purchased, and delivered to them a deed of trust on plaintiffs' home in Casper, Wyoming, executed to the public trustee, although it appears there was no public trustee in the county where the property was situate. When this action was brought the plaintiffs prayed for an injunction to restrain the defendants, Wilkins, Alley and Collins, from transferring or disposing of the notes and securities mentioned.

Upon the coming in of the petition in intervention of the Metropolitan State Bank, it appeared that on the day plaintiffs went into possession of the Delevan Hotel the defendants borrowed from the Bank $7,000, and deposited as collateral security the notes, trust deed and

chattel mortgage obtained from the plaintiffs. Thereafter, the defendants being in default of payment of their note to the bank, the bank proceeded to and did sell the securities and bid them in for the sum of $7,000, and became the owner thereof. The transaction between the defendants and the bank was not known to the plaintiffs until sometime after this action was brought. The defendants Wilkins and Alley were copartners under the name of The City Brokerage Company, and the defendant Collins was their sales agent and operated with them in the sale of the Delevan Hotel to the plaintiffs.

The plaintiffs are husband and wife and came to Denver from Casper about the 1st day of October, 1922. They were wholly unacquainted in Denver, knew nothing of business conditions here, and had had no previous experience in the hotel business. Through an advertisement they got into communication with the City Brokerage Company, at whose office they called, and were introduced to Collins. The undisputed evidence shows that on October 4th Collins took them over to see the Delevan Hotel, stating to them that the Hotel had forty-two rooms; had just been put on the market for sale; that it had an income from $1,200 to $1,500 per month; that the only reason the lady had for selling was because her husband did not help her, and that she was about to become a mother; that they were going to California to live, and told her that Mrs. Christeson was the owner of the property. Plaintiffs were informed by both Collins and Alley that they were representing the owner for the sale of the property, and that the lowest they would take for it was $13,500; told them that it would not be long on the market, as another salesman had it listed. Mrs. Christeson told them it had been listed with the Brokerage Company for six months, and with other real estate firms. Plaintiffs were also informed by Alley that the income of the hotel was as stated by Collins; that he knew the hotel well; that it had forty-two rooms; that it was a good property; that Mrs. Christeson had in less than the two years she had been

operating the hotel paid off $10,000 out of the profits of the business. Mrs. Christeson, according to the plaintiffs, told them that the income from the hotel was from $1,200 to $1,500 per month, and that she had paid off $10,000 of indebtedness in less than two years. Collins told the plaintiffs that they could rely on what Mrs. Christeson said, that they were selling the place for her and would stand back of anything she said. Mrs. Christeson, however, denied that she had stated to them that the income was $1,200 to $1,500 per month. Alley stated to the plaintiffs that they were selling the place, and that they could rely on what they, defendants, told them. Mrs. Christeson told the plaintiffs that $6.50 was the least she was getting for any of the rooms, and that they were all in a clean and sanitary condition. She testified that she sold the property to Wilkins and Alley and received from them the consideration of $11,000, on the 17th day of October, 1922, the day the plaintiffs took possession, but executed the bill of sale to the plaintiffs at the request of the defendants. The plaintiffs made two attempts to see the rooms in the hotel, and saw perhaps a half dozen of them, but were informed by Mrs. Christeson that the others were occupied and could not be seen. During the negotiations, Collins and the plaintiffs went to the hotel for the purpose of taking an inventory, when the defendant Alley later called them and told them that it would be necessary for the plaintiffs to go with him to Casper to show him the house which had been conveyed by the deed of trust, and insisted upon them so doing; that in their absence the inventory was taken by Collins and his assistant. Alley preceded them to Casper and saw the house before they arrived there, from which it appears that the presence of plaintiffs in Casper was wholly unnecessary. Plaintiffs were informed by Mrs. Christeson that the rooms which they did not see were in like condition as those which had been shown. The value of the property purchased was shown by the undisputed testimony to have

been not to exceed $9,500, depending on the number of rooms, and probably only $7,000.

After the plaintiffs had taken possession and were able to make an examination of the rooms, it was discovered that some of them were not renting for more than $4.50 or $5.00 per month; also that the rooms were not in a clean and sanitary condition, that they were poorly furnished, and that the rooms which were not shown to plaintiffs were not at all in the same condition as those which the plaintiffs had been able to see. As to the number of rooms, the plaintiffs claims that there were only 33; the defendants claim there were 42, and the trial court after making a personal examination of the premises found that there were 37.

The gross income of the hotel for the first four months after plaintiffs took possession, commencing with October 17, 1922, was from $609.50 to $753,25 per month, with expenditures running from $474.73 to $562.80 per month. Mrs. Christeson testified that she said nothing to the plaintiffs about the income of the hotel, although she had told Mr. Alley what had been the income during the year 1921, and from this it may fairly be inferred that the statements made by Alley and Collins with respect to the income of the hotel during all of the time Mrs. Christeson had it, were not true; that the income for the year 1922 was not the same as for the year 1921, and that she did not claim to have had any such income during the year 1922 as they represented.

It seems quite clear from the evidence that a studied effort was made on the part of the defendants to conceal from plaintiffs the number of rooms, their condition, the true income of the property and defendants' interest in it. While the defendants Wilkins, Alley and Collins were representing to the plaintiffs that Mrs. Christeson was the owner, that they were representing her, and that the property could not be bought for less than $13,500, a secret deal was pending between the defendants named and Mrs. Christeson for the sale of the property to them

for $11,000, which was consummated; and apparently for the purpose of concealing the true relations between defendants and Christeson the bill of sale was made by her to the plaintiffs. With great haste defendants proceeded to place the securities in the hands of the bank, and failed to make the first and second monthly payments on their note, with the evident design of placing the securities beyond the reach of the plaintiffs.

It is quite plain from the evidence of the plaintiffs that resort was had to fraud, misrepresentation and concealment to induce the plaintiffs to purchase the property for a grossly exhorbitant price. We cannot sanction such a transaction as the record here discloses. *Hughes v. Lockington,* 221 Ill. 57, 77 N. E. 1105; *Isenbeck v. Burroughs,* 217 Mass. 537, 105 N. E. 595; *Divine v. George,* 72 Colo. 17, 209 Pac. 507; *Lee v. Smith,* 72 Colo. 135, 209 Pac. 870; *Lewis v. Winslow,* 77 Colo. 95, 234 Pac. 1070; *Dunshee v. Novotny,* 77 Colo. 6, 233 Pac. 1114.

But it is said that plaintiffs may not complain, because they had full opportunity to examine the property, and failing to do so they were guilty of negligence. We cannot agree with this view. Plaintiffs, in the circumstances of this case, had a right to rely upon the representations made to them. Pomeroy's Equity Jurisprudence (2nd Ed.) § 896; Bigelow on Fraud, p. 523; *Teague v. Hall,* 171 Cal. 668, 154 Pac. 851; *Wilson v. Higbee,* 62 Fed. 723, 726, 727; *Hahn v. Brickell,* 131 Wash. 212, 229 Pac. 739, 740; *Groves v. Chase,* 60 Colo. 155, 162, 151 Pac. 913.

The motion for nonsuit as to the defendants here should have been denied.

Although it appears that the plaintiffs cannot have a rescission of the contract by reason of the fact that the securities which came into the hands of the defendants have passed beyond plaintiffs' reach, yet they are not without remedy.

While this court has held that the party claiming fraud must elect when he brings his suit whether he shall ask for a rescission or sue for damages, this is merely a dec-

laration of the general rule.   Where facts which render rescission impossible, first come to the knowledge of the party claiming fraud, after he has instituted his action for rescission, and where he is in no way responsible for the condition which prevents rescission, whether the remedies be consistent or inconsistent, his action may proceed as one for damages, provided his complaint contains the necessary allegations for that relief, and especially so where, as here, the defendants transferred the securities in violation of their equitable obligation to the plaintiffs. 1 Pomeroy's Equity Jurisprudence (2nd Ed.) p. 309; *United States v. Dunn,* 45 Sup. Ct. 451; *Wright v. Chandler,* (Tex. Civ. App.) 173 S. W. 1173; *Roberts v. Leutzke,* 39 Ind. App. 577, 78 N. E. 635; *Weddingfeld v. Gregersen,* 73 Colo. 582, 216 Pac. 1053; *Hoehne Ditch Co. v. John Flood Ditch Co.,* 76 Colo. 500, 233 Pac. 167.

The judgment is reversed with instructions to overrule the motion for nonsuit and to proceed in harmony with the views herein expressed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE CAMPBELL concur.