## No. 11,978.

### CAHILL v. READON.

Decided December 3, 1928. Rehearing denied January 7, 1929.

Messrs. RINN & CONNELL, Mr. CON K. O'BYRNE, for plaintiff in error.

Mr. E. H. WHITNEY, for defendant in error.

*Department Two.*

MR. CHIEF JUSTICE DENISON delivered the opinion of the court.

MRS. Cahill brought action against Mrs. Readon to cancel an exchange of real estate because of fraud. She was defeated on trial to the court and brings error. The judgment must be reversed.

The court made a general finding for defendant and there is some evidence to support it, but notwithstanding this the plaintiff in error claims, and we think rightly, that the evidence for the plaintiff is convincing beyond a reasonable doubt that she was fraudulently over-reached. *Whittemore v. Wilkins,* 77 Colo. 533, 238 Pac. 69.

The essential facts as shown by the evidence are as follows: Plaintiff Cahill, a widow with two children, was owner of a house in Denver which cost her about $7,500 and afforded her a home with about $90 per month additional; Mrs. Readon had recently acquired a building in Lusk, Wyoming, built for a store with rooms over it at a cost of about $13,000. It had been used for a hotel and had yielded a large rent. The lower part had been used for printing a newspaper. These properties were exchanged February 21, 1925. May 26, 1926, this suit was begun.

Plaintiff claims that the Lusk property was worthless, that she was induced to exchange by representations that the market value of that property was $12,000, that it could readily be rented for $100 per month, that there were persons ready to rent it at that rate who were awaiting Mrs. Readon's decision, viz., one Johnson and one Mrs. Thompson, and another not named, but that defendant would not accept them because she wished to keep the building empty while she held it for sale. Mrs. Readon's

agent, a Denver real estate broker named Kane, was a former friend of plaintiff and was told by plaintiff that she depended on the income of her property for a living and could take nothing but income paying property and told her that he or defendant had offers of $100 per month for the Lusk property as above stated. There is much more evidence of representations, some perhaps actionable and some not, but there can be no doubt whatever that all were made to Mrs. Cahill to lead her to believe that she was buying a valuable property on the income of which she could partly support herself and that she did so believe; neither is there any doubt that she relied on these statements and was induced thereby to make the exchange.

The statement that persons were awaiting Mrs. Reardon's decision to rent was actionable if false, being a statement of an existing fact for the purpose of persuading plaintiff to believe that she would be sure of an income. ''The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, * * * the means of accomplishing it are immaterial.'' *Hankins v. Farmers' and Merchants' Bank,* 42 Okla. 330, 141 Pac. 272. So of the statement that the property would readily rent for a certain monthly rent. A representation of value if made for the purpose of having it accepted as a fact is to be treated as a representation of a fact (*Lewis v. Winslow,* 77 Colo. 95, 98, 234 Pac. 1070), and we see no difference in principle between a representation of sale value and rental value, and the statements of rental value were made to be and were accepted as fact and acted upon. See also *Groves v. Chase,* 60 Colo. 155, 151 Pac. 913; *Jasper v. Bicknell,* 62 Colo. 318, 162 Pac. 144; *Whittemore v. Wilkins, supra.* There is some dispute as to whether Kane or defendant made these statements or some of them, but it is immaterial. Mrs. Reardon is responsible for her agent's statements.

Under the evidence the representations as to market value may possibly be said to have been statements of mere opinion, and so not actionable though false, but the representations as to rental value and that there were persons awaiting opportunity to rent were definite and positive; not mere opinions. They were made to assure plaintiff that the income on which she depended for a livelihood was certain, and were accompanied by the statement of Kane that he could and would surely rent the building for her.

There is strong evidence that the property was literally worthless, but there is some evidence that it had sale value. There is, however, no evidence worthy of consideration that it had any rental value. There is much evidence, including evidence of plaintiff's own witnesses that it had, at the time of the exchange, and has no rental value whatever, and this is incontrovertably proved by the undisputed fact that Kane and agents at Lusk tried for more than a year to rent it but were unable to do so at any price. This is enough to show that the persons ready to rent were fictitious, but there is more: Mrs. Thompson, one of them, called by plaintiff, testified that she was the last tenant of the place, and paid $50 per month in winter and $35 in summer, that she left in August 1924, because she could not make the rent, that Mrs. Readon asked her to take it again at the nominal rate of $100 per month and to give her a check for $100 offering to give back $50 thereof, and said she had "got stung" and wanted to get rid of the property, but that Mrs. Thompson refused to do this. True Mrs. Readon denies this, but it conforms to her conduct which her denial does not. Mrs. Thompson is a disinterested witness and none other of the prospective tenants was called, nor was their absence explained. The conclusive proof of the essential falsity of the representations, however, is the indisputable evidence that the property is unrentable at any price. Who, unless deceived, seeking to buy income bearing property, would buy property with no income at

all. The thing is preposterous. This is not a case of over statement of value or rental value, but of statements which were designed to make and did make plaintiff buy a gold brick. It is like the sale of a dead horse.

The defendant stated to plaintiff that there had been an "oil boom" which had subsided and that values had become stabilized. This was literally true, but the rental values of property such as this had become stabilized at zero, whereas the statement was made with the intent to convince plaintiff it was at $100 per month. *Hankins v. Bank, supra.* A statement literally true is actionable if made to create an impression substantially false. 26 C. J. 1100. *U. S. Copper etc., Co. v. Chicago Bonding, etc., Co.,* 262 Fed. 66, 74; *Mulligan v. Bailey,* 28 Ga. 507; *Parks v. Burbank,* 58 Iowa, 707, 12 N. W. 729; *Lee v. Lemert,* 26 Kas. 111, Brewer J., *Mizner v. Kussell,* 29 Mich. 229; *Gerner v. Yates,* 61 Neb. 100, 84 N. W. 596; *Lomerson v. Johnston,* 47 N. J. Eq. 312, 20 Atl. 675; *Welborn v. Cobb,* 92 S. C. 384, 393, 75 S. E. 691; *Corbett v. Brown,* 8 Bing. 33, 21 E. C. L. 433, 131 reprint 312.

The explanation of this remarkable state of affairs is that about 1919 Lusk enjoyed a brief "oil boom," increased in population from six or eight hundred to about five thousand and about 1923 fell to about one thousand, with the result that property like that in question, not on the main street, became unrentable. Since it is undisputed that representations as to income were made and relied on, and that they were false is shown beyond a reasonable doubt, the issue here becomes one of law only, and we are not bound by the findings of the trial court. *Treat v. Schmidt,* 69 Colo. 190, 192, 193 Pac. 666.

It is claimed that plaintiff was guilty of laches, but she was more prompt in action than most plaintiffs. She first suspected fraud in August 1925 and brought suit in May 1926. The time is not unreasonable. *Groves v. Chase,* 60 Colo. 155, 151 Pac. 913. This matter, however, was determined against defendant in the trial court and no cross error is assigned thereon.

It is claimed that there was no sufficient tender of rescission, but in Colorado the general tender of equity in the complaint is enough. *Treat v. Schmidt, supra.* One who is defrauded may rescind without suit, by a tender and an acceptance thereof, but, on suit in equity to rescind, the tender may be in the complaint. Id.

It seems that the parties cannot be put in statu quo; that would prevent a rescission outside of equity, but in an equitable action the court should make such adjustment of the case as the facts pleaded and proved will justify. *Whittemore v. Wilkins,* 77 Colo. 533, 538, 539, 238 Pac. 69; *Pope v. Parker,* 84 Colo. 535, 271 Pac. 1118, citing other cases.

The contract of exchange contained a statement that Kane was agent for both parties and hence it is claimed that his representations are not subject to action by Cahill, but there is no evidence that he did anything or was employed to do anything on behalf of plaintiff, and she testified that he was not her agent, that she did not employ him, and that the clause was inserted at his request because he wished to charge each party a commission. It is, moreover, undisputed that he was first employed by defendant and that he with her sought out Mrs. Cahill and visited her several times seeking to persuade her to make the deal. He was not, then, plaintiff's agent when the representations were made.

There is a recital in the contract that it "is made subject to the examination and approval of the property located at Lusk, Wyoming, by the party of the second part and which has been represented to be a two story, full basement building with steam heat and not over five years old and known as a hotel building," and defendant claims that this recital is evidence that no other representations were made; but it is of no force as against the direct testimony that others were made and that a woman who must have an income to live on was somehow persuaded to give an income-paying house, being all she had, for property that would yield not one dollar.

It is said there is no showing of wrong intent on defendant's part. We' cannot agree with that. Even without the testimony of Mrs. Thompson, which we have mentioned above, there are still the facts which we have mentioned and the additional fact that the defendant twice visited Lusk to investigate the property and by her testimony had then attempted to rent it. It is incredible that she believed the property would rent for any appreciable sum.

It is claimed that plaintiff was given the opportunity to go to Lusk and investigate. If she had done so the defendant would have probably been relieved of responsibility for her representations, but plaintiff had a right to rely on them and forbear to hunt for falsehoods among them. Defendant cannot say, "I told an untruth, but you might have caught me at it, and so I am not responsible for its effect."

The judgment is reversed and the cause remanded with directions to enter a decree for plaintiff, the terms of the decree to be as may appear just upon the evidence already taken and further evidence if necessary or expedient.

MR. JUSTICE CAMPBELL, MR. JUSTICE BUTLER and MR. JUSTICE ADAMS concur.