MATILDA PRUITT et al., Appellees, v. A. E. GAUSE, Appellant.

**FRAUDULENT CONVEYANCES:** Fiduciary Relations—Presumption.
A conveyance by an aged father to his son—they occupying fiduciary relations—is presumptively fraudulent. Evidence reviewed, and held to strengthen the presumption, instead of overthrowing it.

*Appeal from Monroe District Court.*—C. W. VERMILION, Judge.

JUNE 23, 1922.

ACTION in equity, to set aside a deed of conveyance of land by J. J. Gause to his son, A. E. Gause. There was a decree for the plaintiffs as prayed, and defendant appeals.—*Affirmed.*

*David Strieff* and *Mabry & Mabry,* for appellant.

*John F. Abegglen* and *D. W. Bates,* for appellees.

WEAVER, J.—On September 25, 1917, J. J. Gause, widower, resident of Monroe County, Iowa, was the owner in fee of 70 acres of land there situated. On the date named, said J. J. Gause executed and delivered to his son A. E. Gause a deed of warranty, conveying to him all of said property for the expressed consideration of "one dollar and love and affection." The described land was of the value of about $10,000, subject to a mortgage lien of $5,000, and was all the real estate owned by him. On October 1, 1917, J. J. Gause died intestate, leaving as heirs at law seven children, among whom are the plaintiffs, Pruitt, Gustin, and Jamison, and the defendant, A. E. Gause. There are other children, who are not parties to this action, having disclaimed interest therein. After the death of J. J. Gause, the plaintiffs, as three of his heirs, instituted this action to set aside and cancel the deed to A. E. Gause, alleging that, at the date thereof, deceased was mentally incompetent to transact such business or to comprehend the import of the deed. It

is further alleged that, if such deed was, in fact, made by the alleged grantor, it was obtained without consideration and by undue influence on part of the defendant. It is further alleged and charged that the deed is a forgery.

The defendant denies all charges of fraud and undue influence on his part, and of mental unsoundness or incompetence on the part of the grantor, and alleges, in substance, that the conveyance was made to him in recognition of his prior services to his father, and in pursuance of a promise and understanding on the part of the father that he would thus compensate the son. Upon trial of the issues thus joined, the court, after hearing the testimony offered, found for the plaintiffs, that, at the time the deed under which the defendant claims title was made, the grantor, J. J. Gause, "was incapable and incompetent of executing the same, and that said deed should be set aside and held for naught as against the plaintiffs." From this decree the defendant has appealed.

The legal and equitable rules applicable to cases of this character are too familiar and well settled for restatement or discussion. It is enough here to say, without citing authorities, that, if the deed from J. J. Gause to the defendant was executed at a time when the grantor was mentally incompetent to fairly understand or comprehend the nature and effect of the transaction, or if its execution was procured by the exercise of undue influence by the grantee, or if it was procured under circumstances or in a manner amounting to actual or constructive fraud upon the grantor, the decree setting it aside may be affirmed. In other words, the applicable law being conceded, the vital issue is one of fact. There would be little profit in attempting to recite or review the testimony of the many witnesses, but a statement of some of the principal facts and circumstances, concerning which there is little or no dispute, will be helpful.

At the date of the deed, September 25, 1917, the deceased, J. J. Gause, was about 77 years old. He had seven living children, of whom the eldest (defendant herein) and a daughter, Nancy, a person of feeble mind, lived with him on the farm. His property at that time consisted mainly of the farm of 70 acres, worth about $10,000, on which there was a mortgage lien of

$5,000. Such personal estate as he had previously owned had already been given by him to the defendant. His wife had recently died, and defendant and Nancy continued to live with him at the farm home, as they had been doing for several years. He was in failing health, and the loss of his wife had affected him deeply. On September 23, 1917, the defendant and the daughter took him to a physician, who briefly examined him, and says that the symptoms observed indicated "senility or general breakdown" and very high blood pressure. On the next day, there was no marked change in his symptoms. One of his daughters came to see him, and while there, wrote to each of her absent sisters, apparently to inform them of his failing condition. On Tuesday, the 25th, defendant went to a notary in a neighboring town, and talked with him about procuring a deed of the farm from the deceased. After such consultation, defendant returned home, procured the father's old deed, and took it to the notary, who filled in the blanks conveying the land to the defendant, and handed it back to defendant, directing him to take it home and have his father sign it, and saying that he (the notary) would drive out there, later in the day, and take the grantor's acknowledgment. The notary has since died, his evidence never having been preserved. The facts concerning the making of the deed, except such as appear from the paper itself, are shown only by the testimony of the defendant, given subject to the plaintiffs' objection to his competency to testify thereto. On the afternoon of that day, and, as defendant says, after the notary had left the house, the deceased complained of being worse. A physician was called, arriving about 7:30 P. M., and found him in "a sort of semicomatose condition; suffering with a cerebral hemorrhage. * * * He seemed to be having a slow hemorrhage. It was gradually increasing. * * * I couldn't tell how long the ailment had been proceeding. It might have been only a few minutes previous to that; it might have been a matter of years. His mind was not, at that time, in a complete state of collapse."

From that time, he lapsed into more complete unconsciousness, and died on the following Monday. On Thursday, the second day after procuring the deed, defendant delivered it to

the county recorder for record. So far as appears, no other member of the family had any knowledge of the conveyance until after the grantor was buried, when several of them met at the farm, with a view to a settlement of the estate; and then, when the subject of appointing an administrator and taking an inventory of the property was broached, defendant announced, in effect, that there was no estate, and that he claimed the entire property, by title derived from his father before his death. Thereafter, this action was begun, with the result above mentioned.

It may be said at the outset that the evidence is insufficient to sustain a finding of mental incompetence of the grantor at any time prior to his final sickness, beginning about September 23, 1917; and were this a decisive factor in the case, we should have no hesitation in reversing the decree of the district court. The grantor, never a very robust man, had doubtless been in failing condition, and the death of his wife, in May of that year, was a blow from which he did not readily recover. The burden of his years and grief no doubt bore heavily upon him, both physically and mentally, and contributed to the final breakdown which marked the last week or ten days of his life. Up to that time, however, his weakness and frailty are not shown to have reached a stage to prevent his reasonable comprehension of the nature of a simple, ordinary business transaction. His condition, however, was such as must naturally have tended to subject him to the influence of those in whom he placed confidence. The defendant was his son, who, during practically all his life, had made his home with his father. With the parent's increasing years, the son came gradually and naturally to assume more of leadership in the management of the farm and business. There is no competent evidence of any formal contract between them. The farm was not large, and, so long as his health permitted, the deceased continued to do a part of the labor of operating it, though it is probably fair to assume that defendant also contributed his help. But defendant did not give all of his time and energies to such service. He rented and worked other lands on his own account, worked also for others, and did more or less teaming. He boarded at the home, and, according to

his statement, his father had given him all the live stock and other personal property on the place. There is no occasion to disparage or discount his services to his father. We may assume that they were honestly rendered and of value; but we think it equally clear that they were not rendered wholly without consideration. It is by no means a discreditable or unnatural thing that, as time went on, and other members of the family scattered to build up homes of their own, this father and son should have drawn nearer together, in a way to give the latter a powerful, if not controlling, influence over the former. The relation between them was of close and intimate confidence, a situation which calls into action a well established rule which appears to us an insuperable obstacle to the validating of the deed in controversy; for, as between persons in such relations, "a contract by which the one having the advantage of position profits at the expense of the other will be held presumptively fraudulent and voidable, and the burden is placed upon him who claims the benefits thereof to rebut that presumption by an affirmative showing that such contract was fairly procured, without undue influence or other circumstance tending to impeach its fairness." *Curtis v. Armagast,* 158 Iowa 507, 520. The rule is nowhere more clearly stated than by Mr. Pomeroy, who says (2 Pomeroy's Equity Jurisprudence [3d Ed.], Section 956):

"The doctrine to be examined arises from the very conception and existence of a fiduciary relation. While equity does not deny the possibility of valid transactions between the two parties, yet, because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption."

See, also, *Fitch v. Reiser,* 79 Iowa 34; *Reese v. Shutte,* 133 Iowa 681, 682; *Vorse v. Vorse,* 186 Iowa 1091; *Lampman v. Lampman,* 118 Iowa 140; *Davis v. Dean,* 66 Wis. 100, 109.

That such is the rule is not open to question, and when we bring this case to the test of the standard so furnished, we find

it revealing (1) a relation of trust and confidence; and (2) a conveyance by the weaker party of his entire estate to the stronger, without consideration, without reserving to himself any right of care or support for the remainder of his life, or care or support of the feeble-minded daughter who was wholly dependent upon him, and disinheriting all the remainder of his family, with all of whom, so far as appears, he was on amicable terms. The deed was made within, at most, an hour or two before he lapsed into utter helplessness, under a stroke from which he never rallied; and all this without a word of competent evidence as to the manner in which the deed was procured or executed. The only effort made to satisfy the burden upon the defendant to show that the deed was made while the father was still in his right mind, and with a fair comprehension of the meaning and effect of his act, is the testimony of the defendant himself. This was objected to in due time, and was, of course, inadmissible, under the so-called "dead man's statute." Re-jecting it, as, under the law, we must, the validity of the conveyance must be upheld, if at all, solely by the presumption arising from the notary's certificate of acknowledgment, and the possession of the instrument by the grantee. This, we think, is not enough. The appearance of secrecy which envelops the transaction weakens very much the probative force and value of the presumptions in support of a conveyance which is obtained while the grantor is *in extremis*, and brought to the light only after his death. It seems almost incredible that, if defendant were himself sane, and wished to protect himself from any possible suspicion of unfairness on his part, he should not at least have called in a disinterested witness or two, to see the deed executed and delivered.

There is no pretense, even by the defendant, that the old gentleman had the opportunity or advantage of independent advice from any source, and this fact alone has often been held sufficient to set aside deeds and contracts obtained under such conditions. See *Rhodes v. Bate*, L. R. 1 Ch. 252, cited in Pomeroy's Equity Jurisprudence, supra; *Slack v. Rees*, 66 N. J. Eq. 447; *Post v. Hagan*, 71 N. J. Eq. 234; *Curtis v. Armagast*, supra.

There is not a living competent witness who saw the deed

made or signed or delivered, or heard it mentioned or discussed between the parties. One of the daughters testified that the father and mother said to her, or in her presence, six months before the deed was made, that Asa (defendant) was "to have everything there when they were done with it;" but this witness, though reaching the home on Wednesday morning, and remaining there to the end, makes no pretense of having heard of the deed from her father or from the defendant.

The deed expresses no consideration, except "one dollar and love and affection." This also defendant seeks to cure by his own testimony, which cannot be considered.

It is unnecessary to further extend this review. Defendant's own showing is sufficient to bring the case within that class where he is charged with the burden of proof to overcome the presumption of invalidity which attaches to such transactions between parties in a confidential relation; and this burden he failed to discharge.

The decree appealed from is—*Affirmed*.

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.