ROSCOE SINCO, Guardian, Appellee, v. JENNIE E. KIRKWOOD et al., Appellants.

No. 45037.

MAY 7, 1940.

REHEARING DENIED SEPTEMBER 27, 1940.

G. F. Hoffman, Stephen Robinson, and S. B. Allen, for appellants.

Dio S. McGinnis, O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellee.

HALE, J.—This is an action involving some of the same property and the same parties as in the case of Sinco v. Kirkwood, 226 Iowa 183, 283 N. W. 906, a will contest, which case was tried in the district court of Decatur county and on appeal was reversed in this court on February 7, 1939, for the reason that we then held that the refusal to grant a continuance was an abuse of discretion.

This, however, is an action to set aside a deed made by Thomas Rogers on November 21, 1935, conveying about 150 acres of land in Decatur county to Jennie E. Kirkwood, Clar-

ence Kirkwood, and Ardith Olmstead, in joint tenancy. The petition asking to cancel and set aside the deed of conveyance was filed March 16, 1938, and the cause came on for trial January 25, 1939. The answer was a general denial, and that the conveyance was for love and affection of Thomas Rogers for Jennie E. Kirkwood; that it was in consideration of money loaned to, gifts received by, and obligations of Thomas Rogers; and the specific denial that the deed was the result of undue influence, fraud, and deceit. The answer states that Jennie E. Kirkwood had advanced, loaned, and paid to Thomas Rogers, money, and otherwise aided and assisted him in an amount greater than the reasonable value of the property, and that the deed was the voluntary act of Thomas Rogers.

Thomas Rogers, who executed the deed in controversy, was at the date thereof about 76 years old. For many years he had been an employee of the Rock Island Railroad at Stuart, Iowa. He was retired while he was holding a position as crossing flagman, and during the rest of his life received a pension from the railroad. He had been married and was childless. His wife had died about 1910, a number of years prior to his retirement, and he never remarried. On November 24, 1894, he and his wife adopted Bertha Warren Ashenhurst, who was then 6 years old. At about the same time Jennie E. Ashenhurst (now Kirkwood), the sister of Bertha, was adopted by Clement Rogers, a brother of Thomas Rogers. She was then 8 years old, and lived at Perry, Iowa, until she was married in 1905 to C. T. Kirkwood and removed to Des Moines. About four years after Bertha was adopted she went to her father, Mr. Ashenhurst, and lived with him in Kansas City, Missouri. On the death of her father four years later, she went to McKeesport, Pennsylvania, to live with a brother. After a few years she went with her brother to Panama and lived there six years, and was married to Jack Helms, and in Panama her son, John, was born. The baby was called by some of the witnesses an "instrument baby" and was deformed, but apparently he was the victim of infantile paralysis. When the baby was about 10 months old Bertha returned to the United States and went to her sister's home at

Perry in 1915, remaining there about six months. She then returned to live with Thomas Rogers at Stuart, where he had been living alone since the death of his wife. She lived with her adopted father until 1931, about which time Mr. Rogers was advised by physicians that the boy, John, would be better on a farm. At this time the son of his adopted daughter was in bad physical condition. His right arm was almost useless and he did not have much use of his right leg. The right hand and foot were shrunken. He seemed to be subnormal and was unable to walk upstairs. Apparently out of consideration for the boy, for whom he had developed a great affection as he also had for Bertha, Mr. Rogers bought the farm in controversy, where he and Mrs. Helms both lived until they died, she dying on November 11, 1935, and Rogers surviving her until May 4, 1937, at which time the grandson, John Helms, was 23 years old, still in poor physical condition and underdeveloped. The change in environment from Stuart to the farm had been productive of good results. John became able to ride, and was able to do work, even to the extent of using an ax with his right hand and cutting down trees. He learned to drive a four-horse team, and could milk cows and do different kinds of farm work, and his speech became better. He was devoted to his grandfather and mother, as they were to him and to each other. Many witnesses speak of the affection that seemed to exist among them, and the care given the unfortunate child by his mother and grandfather. The latter seemed to have constantly in mind the thought of the care of John after he (the grandfather) would die. There is evidence that prior to the death of Bertha she and her adopted father and John were assisted by Mrs. Kirkwood in various ways, and after Bertha's death Mrs. Kirkwood assisted John and Mr. Rogers, and both she and her husband were helpful and were trusted by the grandfather, and he relied on them to a great extent. John grew up under the affectionate care of his grandfather and mother. His disability naturally prevented much association with boys of his age. He had had difficulty in learning to talk and did not act as a normal child would. According to the testimony, his develop-

ment after the removal to the farm was remarkable, but he never did become entirely normal, although the record of his testimony at the trial of this case shows a considerable degree of intelligence—perhaps more than would be expected considering his history and disability. As seen by his grandfather, it seemed that he would require assistance after the grandfather's death. This solicitude for the boy's future welfare was very marked in everything that Mr. Rogers did during the latter part of his life. At the time Mr. Rogers moved to the farm, and afterwards, his eyesight was poor. He had granulated eyelids and his eyes were inflamed, and glasses were of little assistance. His hearing was defective. The evidence varies as to the degree of his deafness, but it seems that it was difficult to make him understand. Writing or reading, and other matters requiring the use of the eyes, were done by Bertha.

Bertha Helms died November 11, 1935, and her funeral services were held at a church in Davis City. Thomas Rogers was greatly affected by this death. He went to the funeral, but his condition was such that a physician was called and administered to him. He was unable to go to the cemetery, but was taken home. It appears that at the time he was afflicted with a tumor or cancer of his stomach, which was so large that it could be felt—as one witness described it—"a lump as large as a good sized orange." From the date of his daughter's death he was never well, but greatly run down physically.

The Sunday following Bertha's funeral, neighbors had prepared lunch for members of the family, and at this time Mr. Rogers stated that he wanted his affairs fixed so that John would be taken care of, and asked Mrs. Kirkwood to have a lawyer brought out. She called his attention to the fact that it was Sunday, but agreed to come back the following week and Rogers asked her to bring a lawyer. At about this time Mrs. Kirkwood proceeded to gather up some of the effects of her sister, among them a valuable tea set which Bertha had brought back from the Isthmus, and which was highly prized. Mrs. Kirkwood returned on the evening of November 21, 1935, in company with her husband, C. T. Kirkwood, and Mr. and Mrs.

Deskin, and on the evening of that day occurred the events which are matters of controversy in this proceeding—the execution of the deed, referred to hereafter. After this time the grandfather and grandson continued to live in the farm home. With them, and operating the farm, was Mrs. Mary Ashenhurst, the widow of Harry Ashenhurst, who was a brother of Bertha Helms and Jennie Kirkwood. She remained until August 1936, when she and her children left the farm, after which time Thomas Rogers and John lived in the farm home and the land was rented.

After the death of Thomas Rogers the deed in controversy was filed for record in the recorder's office at Leon, by Verne L. Deskin, on May 14, 1937, and at the same time the will was filed for probate. The will, which was signed at the same time as the deed, provides first for payment of debts, and second:

"Having full and complete confidence that my niece, Jennie E. Kirkwood, and her husband, Clarence Kirkwood, of Des Moines, will amply provide and care for my grandson, John Douglas Helms, I leave all the residue and remainder of my property of whatsoever nature or description to the said Jennie E. Kirkwood, and her husband, Clarence Kirkwood, or to the survivor of either."

The third paragraph names Mrs. Kirkwood as executrix, or, in the event of her death, Clarence Kirkwood as executor, in either case without bond.

The deed was as follows:

"Know All Men By These Presents: That Thomas Rogers (a widower) of Decatur County and State of Iowa in consideration of the sum of one dollar and other valuable consideration Dollars in hand paid by Jennie E. Kirkwood, Clarence Kirkwood, and Ardith Olmstead of Polk County and State of Iowa do hereby Sell and Convey unto the said Jennie E. Kirkwood, Clarence Kirkwood, and Ardith Olmstead, as joint tenants, with right of survivorship, the following described prem-

ises, situated in the County of Decatur and State of Iowa, to-wit: [Here follows description.]

"And I hereby covenant with the said Jennie E. Kirkwood, Clarence Kirkwood, and Ardith Olmstead that I hold said premises by good and perfect title; that I have good right and lawful authority to sell and convey the same; that they are free and clear from all liens and incumbrances whatsoever, except as above stated.

"And I covenant to Warrant and Defend the said premises against the lawful claims of all persons whomsoever, except as above stated.

"And the said ..................... hereby relinquishes .............. right of dower in and to the above described premises.

"Signed the 21st day of November, A. D., 1935.

"Thomas Rogers."

The deed was acknowledged before P. C. Henderson, notary public. Ardith Olmstead, mentioned in the deed, is the daughter of Mr. and Mrs. Kirkwood.

■ We have set out quite fully the background and the conditions surrounding Thomas Rogers at the time of the execution of the deed. He had requested Mrs. Kirkwood to have a lawyer brought out. She had employed one Verne L. Deskin, and she went to him at Des Moines and had the deed and will heretofore set out prepared. They came to the Rogers home on the evening of November 21, 1935, and dispatched John and Fred Ashenhurst, his cousin, to the residence of a neighbor, M. L. Bibbey, who returned with the boys and was a witness to the will. At that time, when they returned, Mr. Rogers, Deskin, Mrs. Deskin, and Mrs. Kirkwood were there. The will and deed were not read to Mr. Rogers at the time Bibbey was in the house. He stayed there until after the departure of the Kirkwoods, the Deskins, and Mrs. Henderson, the notary public. After signing, Rogers made a statement to the effect that he was glad the matter was settled and that John would be taken care of. Evidence was offered on the part of the defendants

that the papers had been read to Mr. Rogers. As to what occurred that night there is disagreement in the testimony, both as to the reading and as to the delivery. It would be useless to attempt to reconcile the testimony. However, the court found, and we are disposed to agree, that, considering the condition of Rogers, as to eyesight, hearing, and his general physical condition, he did not understand at the time he signed the deed that he was giving John nothing. The evidence all indicates that he had the utmost confidence in the defendants Jennie E. and Clarence Kirkwood. He was not a man of much schooling. The papers had been prepared by a lawyer, as he thought in accordance with his suggestion. We think the evidence establishes that, whether the will was read to him or not, in his condition, and with confidence that he reposed in the defendants mentioned, he had no comprehension of the effect of the instruments signed and believed that they were in accordance with his often-expressed desire to make provision for his grandson. Whether in this case there is actual or constructive fraud is not important. The effect in either case would be the same. The direction to have a lawyer was complied with only to the extent that these defendants went to their own lawyer and had papers prepared which gave the entire property to them. The evidence does not show that Thomas Rogers himself had directed the attorney as to the manner in which his property should be disposed of. The lawyer came, bringing with him the papers which had been prepared under the direction of these defendants and presented them to Rogers for his signature. This of itself indicates that the papers were signed by him on account of the trust and confidence he had in his adopted daughter's sister and her husband. Were it not so it would be hard to believe that Rogers, a man of reasonable intelligence, would sign papers of whose legal effect he was ignorant. No opportunity was given for independent advice. In Pruitt v. Gause, 193 Iowa 1354, 1359, 188 N. W. 798, 801, the court referred to the matter of independent advice, saying:

"There is no pretense, even by the defendant, that the old

gentleman had the opportunity or advantage of independent advice from any source, and this fact alone has often been held sufficient to set aside deeds and contracts obtained under such conditions.''

See also, Post v. Hagan, 71 N. J. Eq. 234, 65 A. 1026, 1027, 124 Am. St. Rep. 997; Johnson v. Johnson, 196 Iowa 343, 191 N. W. 353.

Whether or not the various clauses of the deed and will were read to this partially blind and deaf old man, whether, if read, he understood the words, it seems to us clear, from the surroundings and circumstances, that he could not and did not appreciate their effect. Such was the holding of the court, and with this we are disposed to agree.

The principles governing cases of this nature have been thoroughly discussed in the recent case of Merritt v. Easterly, 226 Iowa 514, 284 N. W. 397, where Justice Bliss in his opinion has set out at length the law relating to such transactions and the decisions of this court, many in number, supporting the opinion. Defendants deny that the facts in this case would warrant the conclusion reached under the facts in the Merritt case, and cite, among others, the recent case of O'Brien v. Stoneman, 227 Iowa 389, 288 N. W. 447, decided in 1939, but which we think does not support their position. That case upheld the transfer of real estate but set aside the assignment of personalty. The facts are different from the case at bar. We have here the case of an old man, by reason of his infirmities, shut off from more than a limited intercourse with the world, ill, discouraged and depressed by the recent death of an adopted daughter whom he loved as his own, and who, in his condition, was without anyone to whom he felt he could turn except that daughter's sister, with whom his relations had always been those of friendly affection and close confidence. It seems to us that there here existed such confidential relations as would cast upon the defendants the burden of proof to establish the good faith and fairness of the transaction involved.

Other questions are discussed by counsel. The question of delivery is disputed, and many authorities are submitted. Aside from the presumption attending the possession of the instrument in the hands of the grantees after the death of Mr. Rogers, there is not much testimony as to actual delivery.

Considerable attention was also devoted to the actions of Mrs. Kirkwood after the death of Rogers in having John Helms committed from Polk county to the institution for the care of epileptics and feeble-minded persons at Woodward, from which he was released by habeas corpus proceedings. It is strenuously insisted that this testimony as to her actions in disposing of John is not in any way competent. We think, however, it might be considered as bearing upon her understanding of the entire transaction and her duties in relation thereto. It would at least tend somewhat to negative the idea of any good faith agreement to care for the boy after the death of the grandfather. In any event, its consideration is not essential to a decision of the case.

Nor do we think that the situation in regard to the will contest is material to the decision of the issues in this case. The will was contested and in 1938 a verdict was returned for the contestant, which, as before stated, was set aside on the ground of failure of the trial judge to grant a continuance. It was again tried to a jury with the same result and the case is now here on appeal.

The decree in this proceeding, and the opinion of the court referred to in the decree, indicate that the question of accounting was not completely gone into, and reserves that question for further consideration. By the decree the deed was canceled and set aside and title quieted in the plaintiff against the defendants; and the decree directed an accounting and exempted from operation of the decree claims of the defendants against the estate of Thomas Rogers, which were not determined.

Many incidental questions argued by counsel need not be referred to here. Some citations of authorities by defendants relate to wills rather than to deeds, or to the presumption

of delivery, or burden of proof. It is true that in an action to set aside a deed, under ordinary conditions, the burden is upon the plaintiff, except where confidential or fiduciary relations are established, in which case it is incumbent upon the person claiming under the deed to establish the bona fides of the transaction. We think that such relations have been so established and that the defendants have failed to sustain the burden of proof and to establish the validity of the deed. It is our opinion that the case, under the circumstances disclosed by the evidence, comes within the rule of Curtis v. Armagast, 158 Iowa 507, 138 N. W. 873, Johnson v. Johnson, supra, and other authorities cited in the case of Merritt v. Easterly, supra, which we need not here set out other than by reference. The transaction indicates, in our opinion, at the least, constructive fraud, such fraud as would so vitiate the transaction as to render it void. As stated in the case of Merritt v. Easterly, supra, 226 Iowa 514, 530, 284 N. W. 397, 405:

"To overthrow the decree of the trial court would be to weaken the safeguards which courts of equity have always thrown around the weak and helpless, and would tempt others to benefit themselves through like misconduct."

Under the evidence and all the circumstances attending upon the execution of the deed, we think that the decree setting it aside should be, and it is, affirmed. A motion on behalf of plaintiff to strike defendants' brief and argument in reply, under our holding on the appeal, need not be considered.—Affirmed.

All JUSTICES concur.