JAMES P. MARRON, Appellant, v. ROSE BOWEN, Appellee.

No. 46558.

OCTOBER 17, 1944.

James P. Marron, of Central City, Nebraska, pro se, and Pizey, Sears & Pizey, of Sioux City, for appellant.

Free & Free, of Sioux City, and W. D. McCarthy, of Ponca, Nebraska, for appellee.

OLIVER, J.— The real estate involved herein is a house and lot in Sioux City, Iowa, formerly owned by Catherine E. Kneifl, who died February 8, 1943. Each party claims title under deed from Mrs. Kneifl. The deed to appellant, James Marron, was dated October 7, 1941, and recorded February 10, 1943. Appellee, Rose Bowen's, deed was made October 17, 1941, and recorded October 18, 1941. It reserved a life estate in Mrs. Kneifl.

Mrs. Kneifl, a widow, had occupied the property until about June 1941, when she moved to Ponca, Nebraska. She was then eighty-seven years of age and was in ill health. Appellant was Mrs. Kneifl's nephew and her only heir at law. She had raised him, provided him with a collegiate and legal education, and at various times thereafter had given him money.

In 1941 appellant was a practicing attorney at O'Neill, Nebraska. In the last half of that year he secured from his aunt conveyances to himself of several parcels of real estate, as hereinafter noted. One of these was the deed to the Sioux City

property involved in this case. He testified these conveyances were gifts to him.

July 17, 1941, appellant took his aunt by automobile from Ponca to a Sioux City hospital. He testified that before starting he secured her signature to a deed which conveyed to him a two hundred eighty-acre Nebraska farm and that her acknowledgment was taken en route. Other witnesses testified Mrs. Kneifl told them appellant took her from her sickbed in Ponca to the Sioux City hospital, contrary to the advice of her attending physician; that appellant stopped his car in the business district of Ponca; that appellant and John Hurley (a notary public) came to the car with a deed to the Nebraska farm and she signed it; that she was not aware of what she was signing; that while it was her intention that appellant should eventually receive this farm, she hated to be forced to give it and felt that she should have reserved the property during her lifetime.

On July 31, 1941, appellant went to the hospital and procured her signature to a deed to real estate in Omaha. At the same time a will prepared for her signature was presented to and signed by her. The terms of the instrument had been dictated by appellant. He was present in the hospital room at this time and he took possession of the will. The will devised the Sioux City property to appellant.

Shortly thereafter the Sioux City attorney who drew the will was called to the hospital. On that occasion appellant was not present. Mrs. Kneifl told the attorney she wanted to will the Sioux City property to appellee. A new will which so provided was drawn and was executed by Mrs. Kneifl.

Appellant made frequent visits to the hospital. In August he arranged to have his aunt taken in an ambulance to the house in Sioux City and engaged a nurse to care for her. Appellant returned Mrs. Kneifl to Ponca late in September.

A witness for appellant testified that on October 6, 1941, at the request of Mrs. Kneifl, who was then ill, the witness telephoned appellant that his aunt wanted some business transacted in Sioux City. Appellant's version of this is that he was told his aunt desired that he come ''and see about the Sioux City

property." He testified he drove from O'Neill to Ponca, October 7th, stopping en route to secure a blank deed, and bringing Tom Hall to Ponca from South Sioux City; that he went to the office of Notary Public Hurley and drew the deed to the Sioux City property here in controversy; and that, accompanied by Hall and Hurley, he took it to her bedside and had her sign it. His excuse for his failure to record the deed until after the death of his aunt was that she so requested.

Appellee was a widow residing in Colorado. She was a cousin to Mrs. Kneifl and was Mrs. Kneifl's nearest surviving blood relative on her mother's side. Mrs. Kneifl's letters indicate a deep affection for appellee.

On October 17, 1941, Mrs. Kneifl called a lawyer to her home in Ponca and instructed him to draw the deed conveying the Sioux City property to appellee. At that time she asked the lawyer what effect a prior will would have on the property and he advised her it would not affect the title to property which she did not own at the time of her death. Apparently she made no inquiry as to the effect of a prior deed.

After the deed to appellee was signed and acknowledged Mrs. Kneifl asked the lawyer what to do with it and was advised that delivery, or recording, which would amount to delivery, was necessary to its validity. Under her instructions he had the deed recorded and returned it to her. Shortly thereafter appellee received the deed in a letter written for Mrs. Kneifl, which stated, in part:

"Grandmother asked me to write a letter to you, since she is not able to write * * * She is enclosing the deed to the house in Sioux City to you * * * Grandmother hopes you and your family will come and live there some day when you are able."

Appellant admits he knew his aunt intended to give the property to appellee but says that was if appellee "would come and take care of her." However, letters written by and for Mrs. Kneifl which express her desire that appellee come to Sioux City indicate that no condition was to be attached to the deed of the Sioux City property to appellee. There is much other proof that Mrs. Kneifl intended to deed the Sioux City property

to appellee and also evidence that on different occasions in 1942 Mrs. Kneifl said she had done so.

The regularity of appellee's deed is not questioned. Appellant relies upon the fact that his deed bears the prior date. Appellee pleaded, among other things, that if Mrs. Kneifl executed the deed to appellant she had no intention of passing title to the premises to appellant at said time or thereafter; that a fiduciary relation existed between appellant and his aunt and appellant fraudulently obtained the execution of the deed.

I. Did such fiduciary relation exist between appellant and his aunt? Appellant was a practicing attorney and actively participated in the trial of this case. He testified:

"The deed I obtained on October 7th was executed by her on an occasion when I came to see her at her written request. That is the time I picked up the blank in Sioux City, for the preparation of the deed. I have done a lot of business for her. I acted for her in a fiduciary capacity. That was true of most of these. She relied upon me for advice and counsel and I gave it to her."

Generally speaking, the relation between attorney and client is always fiduciary. It is clear appellant acted as attorney for his aunt in most of her affairs and that this transaction was within the scope of such relation. His statement that he was acting for her in a fiduciary capacity was correct.

II. The rule is well settled that a gift obtained by a person standing in a confidential or a fiduciary relation to the donor is presumptively fraudulent and when its validity is assailed the burden is upon the donee to rebut the presumption of overreaching on his part and to affirmatively establish that in his acquisition of the property he took no advantage of the donor by reason of their relationship, but that the donor acted voluntarily, with freedom, intelligence, and a full knowledge of all the facts. Merritt v. Easterly, 226 Iowa 514, 284 N.W. 397, and cases therein cited.

Curtis v. Armagast, 158 Iowa 507, 526, 138 N.W. 873, 880, states that the burden:

"\* \* \* is upon the defendants to affirmatively show that the deed under which they claim was obtained without undue influence and was the free, voluntary, intelligent, and unrestrained act of the grantor."

Sinco v. Kirkwood, 228 Iowa 1020, 1030, 291 N.W. 873, 878, states:

"It is true that in an action to set aside a deed, under ordinary conditions, the burden is upon the plaintiff, except where confidential or fiduciary relations are established, in which case it is incumbent upon the person claiming under the deed to establish the bona fides of the transaction."

In Burger v. Krall, 211 Iowa 1160, 1167, 235 N. W. 318, 321, the court states:

"The circumstances loudly cry fraud; but if there is doubt about the sufficiency of the evidence to show actual fraud, equity, from the proved relationship and the advantage obtained by defendants therein, implies fraud, and demands of defendants proof that decedent, in extending to defendants the profits and advantages which they now claim, acted with freedom, intelligence, and full knowledge of all the facts."

Appellant's evidence shows his eighty-seven-year-old aunt executed the deed upon her sickbed. She did not have the opportunity or advantage of independent advice. This fact alone has often been held sufficient to set aside deeds and contracts obtained under such conditions. Pruitt v. Gause, 193 Iowa 1354, 1359, 188 N.W. 798.

In Johnson v. Johnson, 196 Iowa 343, 348, 191 N.W. 353, 355, the court said:

"If someone else had sought to obtain a conveyance of his property, she would have been his independent adviser, and would have protected him against ill advised action. Inasmuch as she became the beneficiary of this transaction, he was necessarily deprived of her help and advice. In such a case, equity inquires, Who was his helper? Did he have any? Did he have independent advice, legal or otherwise? If his wish had been to refuse the gift, was there anyone to stand for him

and to. put forward the refusal? It is incumbent upon the defendant to make some answer to these questions.''

In the case at bar the circumstances under which appellant obtained his aunt's signature to various conveyances reflects his dominance over her, as well as his disposition to obtain her property irrespective of her condition or desires. Although he knew his aunt intended to give the Sioux City property to appellee, he obtained her signature to a will which bequeathed it to him. When he was absent she executed a new will bequeathing the property to appellee. Later appellant obtained Mrs. Kneifl's signature to the deed to himself. Apparently Mrs. Kneifl did not know the nature of this instrument. Her conversation with the lawyer who prepared the deed to appellee indicates the only outstanding instrument involving the property known to Mrs. Kneifl was a will. The gift of property not owned by her would have been a mockery. It is improbable she would have deeded to her beloved cousin property which she knew she had previously conveyed to another. Neither the statements in the letter transmitting the deed to appellee nor Mrs. Kneifl's subsequent declarations that she had deeded the property to appellee are consistent with appellant's contention that Mrs. Kneifl had knowingly conveyed it to him. Various other circumstances shown in the record tend to discredit appellant's version of the transaction in question.

It is clear appellant has failed to carry the burden of proving that in said transaction he took no advantage of Mrs. Kneifl by reason of his fiduciary relationship and that she acted voluntarily, with freedom, intelligence, and a full knowledge of all the facts. On the contrary, the record indicates she was overreached.

We are satisfied, as was the distinguished trial court, that the deed which purported to convey the Sioux City property to appellant was invalid.

III. The suit was commenced prior to the effective date of the Rules of Civil Procedure but was tried after said date. The court ordered that the former statutes should govern the procedure. There was no abuse of discretion in this order. See Rule 1(b), Rules of Civil Procedure.

■ Before the parties had rested appellee requested permission to amend her pleadings to conform to the evidence. The court granted the request; the amendment was promptly filed, and several days later appellant filed a responsive pleading. The amendment merely conformed the pleadings to the proof. No prejudice to appellant appears. A large discretion was lodged in the trial court in allowing such amendments. We are not inclined to interfere with this order.—Affirmed.

All JUSTICES concur.