J. F. McGAFFEE, appellant, v. LOREN McGAFFEE et ux., appellees.

No. 48070.

(Reported in 56 N.W.2d 36, 58 N.W.2d 357)

December 16, 1952.

Supplemental Opinion on Rehearing (as to Division VI only)

May 5, 1953.

Lorna L. Williams and Emmert, James, Lindgren & Eller, all of Des Moines, for appellant.

Eskil C. Carlson, of Des Moines, for appellees.

SMITH, J.—Plaintiff was eighty-six years old and his son, defendant Loren McGaffee forty-seven, at the time of trial. Defendant Gretchen McGaffee is wife of her codefendant. Long prior to the events involved here plaintiff was engaged in the sheet metal business in Des Moines under the trade name J. F. McGaffee Co. That business was never incorporated.

About 1930 (both parties are indefinite as to the date) plaintiff took his son into the business. "I told Loren he could come and work for me. * * * I would teach him about pipe work and when we had a chance for a plumbing job he would work under the plumber and learn that trade. * * * and whenever he got the plumbing business so he could do the plumbing work * * * and get a plumber's license * * * I would take him in as a partner."

Loren testified: "* * * my father approached me about going into business with him. I organized a corporation with Mr. Landis [1934] and called it Des Moines Plumbing and Heating Co. I received a salary from my father up to the time of the corporation but not afterwards. I drew some money from J. F. McGaffee Co. since the organization of the corporation but I never received a check for wages."

He further said the corporation was later dissolved (1941) and "we put the two businesses together" about the same time. "From then on, I would say that I received earnings * * * the business divided on earnings. * * * The businesses operated together for a number of years and my source of income * * *

was whatever the company could afford to pay. * * * I received wages from the two companies up to July, 1946."

Plaintiff testified he furnished the money for organizing the plumbing corporation. "Plumbing supplies were charged on the credit of the J. F. McGaffee Co. I paid the wages for the plumbers * * * including Mr. Landis' wages. I furnished the shop."

Reverend Henry W. Landis was a minister of the gospel but thriftily claimed also the more worldly title of plumber, with both a master plumber's and a journeyman plumber's license. He testified: "I suggested we incorporate * * *. There were no shares of stock issued * * *. Loren was to be the president and I was to be secretary-treasurer. We never had any directors or members meetings officially." Apparently no stock ever issued (authorized capitalization was for $10,000) and there was no actual capital except "I had quite a few tools * * * and there was no direct moneys exchanged because it was in the depression and we had none and I had this material and I had some customers and so did Mr. McGaffee have some customers. Mr. J. F. McGaffee Company's credit was used to obtain materials at first and after we incorporated * * * materials were bought under both names." Plaintiff testified: "I furnished all the money for the plumbing business. * * * Loren McGaffee had no money and neither did Henry Landis." Loren did not testify on the subject.

Some time after Loren came into the business his wife became bookkeeper for both the sheet metal company and the plumbing corporation at $50 per month from each. Plaintiff said "From that time on I turned the money from the business and collecting matters over to Gretchen to take care of and to pay the bills and make out the statements and trusted her with everything." She wrote checks on plaintiff's personal account, made deposits and "so far as I know * * * balanced the bank statement with the checkbook and picked up the bank statement each month and the cancelled checks."

Gretchen herself thinks this employment started about 1934 "when it was necessary to pay sales tax to the state of Iowa." Her testimony substantially corroborates plaintiff's but

goes into greater detail. It explains that prior to the dissolution of the plumbing corporation the two businesses kept separate books. "I wrote the checks for the [plumbing] company but * * * they were signed by Henry Landis and Loren McGaffee until the corporation was dissolved in June, 1941. * * * they had their own books and since then operated on a partnership basis" with "but one set of books."

The various exhibits in the record added some explanatory details to the picture. April 30, 1934, plaintiff, on behalf of J. F. McGaffee Co., applied to the State Board of Assessment and Review (Sales Tax Division) for a permit to engage in the plumbing, sheet metal and furnace business, under "sole ownership." The Des Moines Plumbing & Heating Company, Inc., certificate of incorporation issued July 16, 1934. The Articles of Incorporation show plaintiff had no part in its formation though he financed it except for the "few tools", plumber's licenses and customers contributed by Mr. Landis. The articles show only Loren and Landis as incorporators and they only join in the notice of dissolution published June 5, 12, 19, and 26, 1941.

The situation after the plumbing corporation dissolved was not materially different except for a closer merging of the two businesses. Mr. Landis testified he did not think the corporate assets were sufficient to offset the liabilities. He never received any profits from the corporation ("just the wages I received at different times I worked") and he did not receive any profit-and-loss statement on dissolution. On April 23, 1942, he, in writing, assigned to Loren ("operating the Des Moines Plumbing and Heating Co.") a cash deposit of $100 in the hands of the city treasurer registered "in the name of H. W. Landis (Des Moines Plumbing and Heating Co.)".

The name of the plumbing company was retained after dissolution of the corporation, the names of both concerns being used as before. In 1944, 1945 and 1946, "Inspection Reports" to the Iowa State Tax Commission, Division of Retail Sales and Use Tax, were made in the name of the plumbing company by L. E. McGaffee (in 1944 and 1946) and by J. F. McGaffee (in 1945).

Each of these gave J. F. McGaffee as individual owner and each said there had been no "change in ownership since permit was issued." There are three "Employer's Reports of Taxable Wages" dated respectively "12-31-45", "9-30-46" and "3-31-47." All are in the name of J. F. McGaffee Co. and all say no "change of ownership, or other transfer, of the business."

The real controversy here involves a written "Assignment and Transfer", dated July 1946, and signed in duplicate with the name of both companies "by James Frank McGaffee"; and signed by James Frank McGaffee, Nina McGaffee and Loren E. McGaffee individually. (Nina McGaffee is plaintiff's second wife. His first wife, Loren's mother, died in 1944.) The text of said document is as follows:

"I, James Frank McGaffee, for valuable consideration in hand paid and in compliance with a promise and understanding had and made by me, I do hereby transfer, sell, set over, assign and convey to my son, Loren E. McGaffee all of the shop, stock, tools, materials, equipment and all accounts and all rights of every kind and character in and to the business commonly known as J. F. McGaffee Company and Des Moines Plumbing and Heating Company, being a business operated at 1408 Harding Road, Des Moines, Iowa; and

"This conveyance includes all of the tools, equipment, materials and stock stored in the garage at 708 East Sheridan, Des Moines, Iowa, my home;

"This assignment does not convey any real estate but does convey all of the personal property and the good will, et cetera of the said J. F. McGaffee Company and Des Moines Plumbing and Heating Company;

"The assignee, Loren E. McGaffee is the sole and only partner that I have had in said business and I am transferring all of my rights in said businesses and all of my rights as a partner of the partnership to Loren McGaffee. The assignee, Loren E. McGaffee in consideration of this transfer assumes all the obligations and debts of the partnership and James Frank McGaffee represents that there are no debts or obligations created by him personally in said partnership.

"I, Nina McGaffee, the wife of James Frank McGaffee hereby join in and consent to the hereinbefore assignment and transfer.

"Des Moines, Iowa, July    , 1946."

Notwithstanding this transaction defendant Loren McGaffee, under date April 28, 1947, signing as "partner", made an "Employer's Contribution and Summary Report" to the Iowa Employment Security Commission on behalf of *"J. F. & Loren E. McGaffee d/b/a J. F. McGaffee Co. & Des Moines Plg. & Htg. Co."* It purported to cover January, February and March 1947, and to give pay-roll and wage details for those months. It answered "no" to an inquiry as to any sale of business.

A similar report, *similarly signed,* dated July 22, 1947, covered April, May and June 1947. The one dated October 24, 1947, for July, August and September 1947, however, was signed by Loren as "owner", but it still listed both men as doing business under the company names.

A partnership Income Tax Return for "J. F. McGaffee Co. & Des Moines Plbg. & Htg." for 1946 was signed "Loren E. McGaffee." But April 5, 1948, he filed with Iowa Employment Security Commission a "Report of Employer on acquiring a Business" signed "Des Moines Plbg. & Htg. Co. and J. F. McGaffee Co. by Loren E. McGaffee" under the title "owner." And December 31, 1948, he signed and filed two Trade Name certificates, one for each company, listing himself only as the one "owning or having any interest in the business."

A large number of exhibits was produced in contemplation of an accounting in event plaintiff's prayer for cancellation of the so-called "Assignment and Transfer" was sustained. The trial court however refused cancellation and upheld the validity of the instrument in question. Plaintiff has appealed from the decree dismissing his petition.

I. From the mass of testimony which we have condensed we must conclude plaintiff and his son, in July 1946, were partners, or at least joint adventurers—it is immaterial which—(see Goss v. Lanin, 170 Iowa 57, 61, 152 N.W. 43; 48 C.J.S., Joint Adventures, section 5b; 30 Am. Jur., Joint Adventures, section 34) in the *operation* of the combined busi-

nesses. There is no evidence however that Loren *owned* any interest in the *physical property* or had ever contributed to the capital of the business except possibly labor in excess of his withdrawals as wages or profits. Of this latter possibility there is no tangible showing.

Just when the actual partnership or joint adventure relation began, as a matter of law, is also immaterial. It is sufficient that the mutual association, confidence and reliance did exist and had for some time existed when the "Assignment and Transfer" was executed. The evidence is ample to establish both a confidential and a fiduciary relationship between the father and son who were so intimately associated in business.

In the Restatement of the Law of Trusts, chapter 1, section 2, comment b, page 8, it is said "Each member of a partnership is in a fiduciary relation to the other partners." And later under the same comment:

"A confidential relation may exist although there is no fiduciary relation; it is particularly likely to exist where there is a family relationship * * *. If one person is in a confidential, but not a fiduciary, relation to another, a transaction between them will not be set aside at the instance of one of them unless in fact he placed confidence in the other and the other, by fraud or undue influence or otherwise, abused the confidence placed in him."

See Merritt v. Easterly, 226 Iowa 514, 517, 284 N.W. 397, citing Thomas v. Whitney, 186 Ill. 225, 57 N.E. 808, 810.

The distinction between confidential and fiduciary is unimportant here since by any standard of fair dealing we think plaintiff is entitled to have the so-called "Assignment and Transfer" set aside.

II. The business relationship began when plaintiff was in his middle sixties, his son considerably under thirty. When the transaction here complained of took place sixteen years of association had passed, plaintiff was past eighty, Loren about forty-one. That some reversal of the father's original dominance and the son's subservience took place during the intervening years

hardly requires proof. It would be normal if not indeed inevitable.

We must conclude under this record that plaintiff was dominated by defendant and that the latter took advantage of the relationship. There is no claim plaintiff had the benefit of disinterested advice, legal or otherwise. Loren arranged the meeting in the office on Saturday when no one but himself and his father and stepmother (Nina) would be present. He had had the instrument prepared in advance by his own lawyer and without plaintiff's knowledge. The momentous transaction was hurried through. Loren testified they "talked for about an hour" and that he explained the instrument to both of them. But Nina McGaffee said: "We weren't in the office over ten minutes." Plaintiff confirms her estimate of the time. Under either version the time was too short for an aged father and business associate, without preliminary warning or advice, to decide whether to give away his entire business to his son.

Even were there no showing of actual fraud we would conclude there was here such an exercise of influence under confidential and fiduciary relationship as to cast on defendants the difficult burden of showing the transaction was free from taint. Curtis v. Armagast, 158 Iowa 507, 520–522, 138 N.W. 873; Marron v. Bowen, 235 Iowa 108, 112, 16 N.W.2d 14. This burden they have not carried.

III. Loren testified he had previously talked with plaintiff about the condition of the business, the inadequacy of their quarters for any expansion and the necessity of moving to another location. But he does not say they ever discussed the subject matter of this "Assignment and Transfer." He says his father would not sign a new lease and "nothing ever came" of their talk of moving or building. But he does not say he ever had previously suggested that plaintiff give the business to him until that Saturday afternoon when no one was present to advise his father as to the proposed step.

Loren testified he had concluded that "in order for me to get some additional cash from the source I was going to get it, I would have to take over the company myself." He testified he called his father and Nina over to the office and "I told Dad if

he would turn the company over to me I would take the obligations and debts \* \* \* which were in a great amount \* \* \* and by doing so \* \* \* I could obtain money, but I could not obtain it if Dad and the other side of the family was still interested." (We find no explanation of the words "the other side of the family.")

Plaintiff's version (on cross-examination) is not materially different: "Q. At the time you signed \* \* \* do you recall that you intended that contract to be used so that Mr. Loren McGaffee could borrow money? A. I recall doing that in the office, yes." And on redirect examination he said: "I had confidence and faith in him. He was a nice boy and wouldn't do anything to beat his Dad out of anything and that is one reason I signed it without even reading \* \* \* when he told me that it had nothing to do with the business whatever, but just to get a loan \* \* \* that I couldn't get on account of my age."

Nina said Loren wanted plaintiff to sign "so he could get a loan. \* \* \* He said his father was too old to get a loan \* \* \*. My husband asked him something about the business before he signed and he said it made no difference in the business."

Loren testified that after the two copies of the "Assignment and Transfer" were signed he had to turn them over to Mr. Reed "where I was borrowing the money." But Reed flatly contradicted this: "I did not have any conversation with Loren McGaffee about having his father assign and transfer the business before I would lend him this money." Shown the two signed copies of the "Assignment and Transfer" Mr. Reed said "I have never seen them before. \* \* \* To my best knowledge Loren McGaffee at no time told me he had any such papers."

Loren testified the company was of little value (he first said it was worth "nothing"). But subsequent undisputed testimony of disinterested witnesses showed that stuck away in boxes there were uncollected accounts in large amounts covering work done prior to July 1946. One witness told of such bills due from her own firm amounting to $13,000; another told of invoices amounting to $2968.14 for work from July 26, 1940 to June 21, 1947. Both said in effect that Loren said he and his wife were too busy to get the bills out. An attorney testified to accounts

turned over to him for collection for services performed prior to July 1946, amounting to $8769.12 in one group and $8858.12 in another.

There was ample evidence to explain why the business was short of cash but none to support Loren's expressed opinion that in July 1946 "we was broke."

IV. The documentary evidence already summarized, consisting of reports to state agencies, confirms our conclusion that plaintiff was not well advised of the conclusive nature of the document he signed. There is some indication even that Loren himself did not fully understand its full significance or was unwilling to disclose the real transaction. We have already pointed out that as late as April 1947 he reported to the Employment Security Commission as *"partner"* on behalf of *"J. F. & Loren E. McGaffee* d/b/a J. F. McGaffee Co. & Des Moines Plg. & Htg. Co." for the first three months of that year, and again for the second quarter of the year under date July 22, 1947.

Further discussion would serve no purpose. The entire transaction is indefensible in a court of equity. Whether the case be viewed as one of actual or constructive fraud, the so-called "Assignment and Transfer" should be set aside.

V. On October 31, 1950, plaintiff wrote his son: "Loren— Not so long ago you and Gretchen were going to make arrangements at the bank to pay me a thousand dollars which I lent you from that inheritance to me. This did not pay interest at the rate you should have paid, but if you will get it for me quickly I shall accept the one thousand dollars as principal and interest of this money lent. I need it badly, as you know. Dad." Defendant Gretchen McGaffee explained this referred to a loan to the business before 1946. Whether that be true or not it was unconnected with the transaction in question here. The trial court rendered judgment on it in favor of plaintiff and against Loren and the latter has not appealed. That part of the trial court's decree will not be disturbed by our decision here. Otherwise, the decree will be reversed and the "Assignment and Transfer" of July 1946 canceled.

VI. It is clear however the parties cannot now be restored to their condition as it existed prior to July 1946. We can only grant plaintiff relief by money judgment. The power of equity to do this where the original status quo cannot be reinstated is undoubted. 12 C. J. S., Cancellation of Instruments, sections 77a, 79a, b; 9 Am. Jur., Cancellation of Instruments, section 65, note 1; Cahill v. Readon, 85 Colo. 9, 15, 273 P. 653, 656 (12).

An accounting will be necessary before the amount of such judgment can be determined. We cannot make such accounting here and the case will have to be remanded for that purpose in order that the value of the property taken over by defendants may be ascertained.

The decision of the trial court (with the exception noted in Division V above) will be reversed and the case remanded for accounting and final judgment.—Reversed and remanded.

MULRONEY, C. J., and BLISS, GARFIELD, WENNERSTRUM, MANTZ, HAYS, and THOMPSON, JJ., concur.

SUPPLEMENTAL OPINION ON REHEARING

MAY 5, 1953.

The original opinion in this case was filed on December 16, 1952. It is found in 56 N.W.2d 36. A rehearing was granted as to Division VI only. This division pertained to the relief granted to appellant. It is now determined that other and further relief should be granted. Division VI of the opinion of December 15, 1952, is modified, and the case is reversed and remanded.

Lorna L. Williams and Emmert, James, Lindgren & Eller, of Des Moines, for appellant.

Eskil C. Carlson, of Des Moines, for appellees.

THOMPSON, J.—Our first opinion in this case was filed on December 16, 1952, and is found in 56 N.W.2d 36. We there determined the major issue of cancellation of the purported

assignment of July 6, 1946, in favor of the plaintiff-appellant. Rehearing was denied as to this opinion except as to Division VI thereof. This leaves the issues discussed and decided in the remainder of the opinion as matters adjudicated.

A rehearing was granted as to Division VI, which is now set aside and the following substituted therefor. This is the final division of the opinion and pertains to the relief to be granted to the plaintiff. In effect, it. held that restoration of the status quo ante was impossible, or at least impracticable, and plaintiff's relief must be by money judgment for the value of the property taken over by defendants, and ordered an accounting for that purpose. Upon rehearing it is now determined that such relief is inadequate and plaintiff is entitled to other and further restorations and compensations for the wrong done him. The major facts are set out in the original opinion. Other evidence will be referred to in connection with the matters discussed in the opinion which follows.

I. We held in the first opinion that plaintiff was at all times the owner of the physical property and assets of the business of J. F. McGaffee & Company and Des Moines Plumbing & Heating Company, and the defendant Loren McGaffee was a partner or joint adventurer only in the operation of the business. We shall assume that he was an equal partner since there is no evidence to the contrary. This implies he would be entitled to one half of the net profits, and that his services were rendered as his contribution to the operation. That is to say, J. F. McGaffee furnished the physical property and Loren furnished his services as the basis for his share in the net earnings. The defendant Gretchen McGaffee is the wife of Loren and was the bookkeeper for some years before the date of the assignment, July 6, 1946, and seems to have been active in the operation of the business as an office manager since that time.

We have now concluded that it is possible to restore the status quo to such an extent that the assets of the business should be returned to the plaintiff. True, they are not entirely the same assets. Personal property wears out, is broken or destroyed when used in the operation of an active business. Change is inevitable in all human affairs. But the business is

still there, and is operating with the same type of property, probably greater in extent, as before. We held in the preceding opinion that the assignment, under which the defendants took possession and control, was obtained by fraud, and it was canceled and set aside. This leaves the question of what equity should do to repair the wrong and what is required in justice to all parties.

▮▮ Equity has broad powers in this class of cases. Such relief should be granted as will most nearly work substantial justice to all parties. 12 C. J. S., Cancellation of Instruments, section 77a, page 1078. It may be true here that the defendants now have a more successful and profitable business than the one they took from the plaintiff in 1946. Whether this be due to their energy and business acumen, or to economic conditions which prevailed following the close of World War II, we need not determine. Under well-established rules of law, having obtained plaintiff's business by fraud, they held it as trustees for him and cannot now be heard to say that it is an injustice to them to return it to him, enhanced in value though it may be.

▮ The rule is thus expressed in Restatement of the Law of Restitution, section 202c, page 820:

"The result, it is true, is that the claimant obtains more than the amount of which he was deprived, more than restitution for his loss; he is put in a better position than that in which he would have been if no wrong had been done to him. *Nevertheless, since the profit is made from his property, it is just that he should have the profit rather than that the wrongdoer should keep it*. It is true that if there had been a loss instead of a profit, the wrongdoer would have had to bear the loss, since the wrongdoer would be personally liable to the claimant for the value of the claimant's property wrongfully used by the wrongdoer. If, however, the wrongdoer were permitted to keep the profit, there would be an incentive to wrongdoing, which is removed if he is compelled to surrender the profit." (Italics ours.)

▮ We hold that plaintiff is entitled to the ownership and possession of the physical assets of the business, including all

trucks, tools and implements now used in its operation, the books of account, money on hand, accounts receivable, and all other personal property; and the defendants are ordered to transfer the registration of the trucks forthwith. It is conceded that these have been purchased with money from the business. In fact, the defendant Gretchen McGaffee, bookkeeper and office manager, testifies that since January 1, 1947, neither of the defendants has had any funds except such as came from the business.

■  Two pieces of real estate, known as 1346 Harding Road and 1414 Harding Road, each in Des Moines, have been purchased with funds of the business. These must be determined to be held in trust for the plaintiff, to the extent that they were purchased with business funds. Restatement of the Law of Restitution, section 190, page 780, says: "Where a person in a fiduciary relation to another acquires property, and the acquisition or retention of the property is in violation of his duty as fiduciary, he holds it upon a constructive trust for the other.".

The same must be true of the two Buick automobiles, since defendants concede they were purchased with money taken from the business; which means as the earnings of the property which they held in trust for the plaintiff. A constructive trust arises. We think that if, upon an accounting, the defendants shall pay all sums that may be found due from them, these automobiles may be discharged from the trust; but until such time a trust must be impressed. The defendants are permitted to retain possession of said automobiles until the final accounting is had herein; but they are both enjoined from disposing of or creating any lien upon them until the rights of the parties are determined by the accounting.

It also appears that certain moneys of the business were used to pay a mortgage and perhaps other charges on the homestead of the defendants, known as 3222 Bowdoin Avenue, Des Moines. A lien should be impressed upon this real estate to the extent that funds taken from the business were used. All insurance policies upon the properties, both real and personal, should be made over to the plaintiff, or proper steps taken that his interests may be protected.

II. Of course an accounting is called for, and the case must be remanded to the trial court for. that purpose. Upon such accounting the defendants will be charged with all moneys taken by them from the business, including all accounts collected either before or after July 6, 1946. Plaintiff will likewise be charged with all moneys paid to him. The defendant Loren McGaffee will be entitled to credit for one half of the net profits, and the defendant Gretchen McGaffee to the reasonable value of her services. Moneys received by the defendants for rentals of 1414 Harding Road will be charged to them. They will, of course, have credit for proper expenditures in the operation of the business and for taxes, insurance premiums and other charges. Defendants will also be credited with any of their own moneys invested in the business before 1947, if any such there was for which they have not been reimbursed. The usual rules of accounting will be followed, and each party will be given all proper credits and charged with all proper debits, in accordance with the two opinions in the case.

III. One other matter urged by plaintiff upon rehearing must be considered. It is plaintiff's claim that a certain account owing from a corporation, known as Grand Avenue Apartments, was permitted to become barred by the statute of limitations through the negligence of defendants. There is evidence to this effect; whether it is conclusive either as to the fact that the account is barred or as to defendants' negligence we do not now determine. The matter may be inquired into by the trial court upon the accounting and a proper order made. It would at least be material upon the question of the value of the services of the defendant Gretchen McGaffee, whose province it was to bill and collect accounts. It may or may not also be that the loss was such as reasonable care would have guarded against, and that the wrongdoers should bear the loss in accordance with the principles expressed in the quotation from the Restatement of the Law of Restitution, section 202c, supra.

There is evidence that the payment of some accounts, and perhaps the accounts themselves, were not shown upon the books, but were paid direct to Loren McGaffee. These, of course, must

be considered and proper charges made in the accounting. The cause must be reversed and remanded for further proceedings in accordance with the opinions rendered.—Reversed and remanded.

All JUSTICES concur.